## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————  :

LEO MERONVIL,                              :

                 Plaintiff,         :

                          :

      v.                                   :

JANE DOE #1, et al.,                       :

             Defendants.        :

—————————————————————  :

                 Civil No. 17-8055 (KM) (CLW)

                 **OPINION**

## KEVIN MCNULTY, U.S.D.J.

Leo Meronvil, an inmate at East Jersey State Prison in Rahway, New Jersey, filed this pro se civil rights complaint against defendants Sergeant Oliver and Senior Correction Officer E. Vazquez[1] arising out of an alleged assault on September 16, 2016, when he was housed at Northern State Prison. DE 22 (amended complaint). Meronvil alleges that the defendants and other corrections officers used unconstitutional excessive force against him, motivated by discrimination based on his race or national origin, when they beat him after he defied an order to remain on his knees and instead prostrated himself on his stomach during a search. *Id.* at 3–5. Meronvil asserts excessive force, due process and equal protection violations, and conspiracy in violation of the Eighth and Fourteenth Amendments; 42 U.S.C. §§ 1983, 1985, and 1986; and the New Jersey Civil Rights Act ("NJCRA"), N.J. Rev. Stat. § 10:6-2. *Id.* at 2, 6.

The defendants now move for summary judgment on Meronvil's excessive force and conspiracy claims on the grounds that (1) there is no evidence that they were personally involved

---

[1] This name is not spelled consistently in the record. Meronvil spells it "Vazquez" (DE 22; DE 110-1); defense counsel uses both "Vazquez" and "Vasquez" (but mostly "Vazquez") (DE 105-1); and certain documents, such as the New Jersey Department of Corrections ("DOC") Special Investigation Division Administrative Investigation report and one of the DOC Special Custody reports, use "Vasquez" (DE 106; DE 110-1). For the sake of consistency, this opinion uses "Vazquez."

in the alleged excessive force; (2) there is no evidence of an agreement or racial or class-based motivation to deprive Meronvil of the equal protection of the laws; and (3) the § 1986 claim is time-barred. DE 105-1 at 5–6. For the reasons below, the motion will be granted as to the claims arising under Sections 1985 and 1986, but denied as to the excessive force claims.

# I.    BACKGROUND

## A.  Complaint and Factual Allegations

Meronvil's amended complaint alleged as follows:[2]

On September 16, 2016, while in his housing unit at Northern State Prison, defendant Sergeant Oliver "ordered everyone (all inmates) on their knees and to place their hands behind

---

[2] Although this is a motion for summary judgment, I include the allegations in the amended complaint for background, due in large part to the paucity of the defendants' submissions in support of summary judgment. I will not, however, consider the allegations in deciding the defendants' motion, because the complaint has not been properly verified. That is, Meronvil did not (as explained below) sign it under penalty of perjury. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020) (a verified complaint may be considered as an affidavit on summary judgment); *Doe v. Heart Solution, PC*, 923 F.3d 308, 315 (3d Cir. 2019) ("while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot").

28 U.S.C. § 1746(2) permits submission of an unsworn statement to the Court if it includes a statement substantially in the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *See id*. Meronvil included the following statement (signed and dated) at the end of his amended complaint:

> I, Leo Meronvil, declare *under the penalty* that the foregoing statements made by me are true and correct to the best of my knowledge and belief as I understand it to exist.

DE 22 at 7 (emphasis added). Courts have found similar language—i.e., language that is missing the reference to perjury—insufficient to satisfy the "substantial compliance" requirement of § 1746. *See*, *e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) ("The substitution of 'subject to punishment' for 'under penalty of perjury' is a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute. Inclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements. Moreover, as the Fifth Circuit has observed, omission of the phrase 'under penalty of perjury' would 'allow[ ] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.'") (quoting *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)); *Tustin v. Strawn*, No. 18-505, 2020 WL 3084064, at *2–3 (W.D. Pa. June 10, 2020) ("None of these documents were sworn or declared to be true under penalty of perjury in accordance with 28 U.S.C. § 1746. Therefore, they do not qualify as evidence that the Court can consider in evaluating Plaintiff's opposition to summary judgment."); *Hodge v. Warden of Dauphin Cnty. Prison*, 19-01573, 2021 WL 3578316, at *4 (M.D. Pa. July 14, 2021) ("[U]nsworn declarations are insufficient if not phrased in a manner that

their heads." DE 22 at 3. After 10 or 15 minutes, in response to complaints of discomfort, Oliver

allowed some inmates to lie on their stomachs. *Id.* About 5 minutes later, Meronvil requested to

do the same because his knees "were hurting badly." *Id.* at 4. Oliver asked where he was from,

and Meronvil replied that he was from Haiti. *Id.* Oliver allegedly responded, "Only Americans

get the comforts of America[.] No, stay on your knees." *Id.* Oliver and other officers laughed and

---

subjects the declarant to the penalty of perjury.") (citation and quotations omitted), *report and recommendation adopted*, 2021 WL 3565786 (M.D. Pa. Aug. 12, 2021); *Cost v. Borough of Dickson City*, No. 18-1494, 2020 WL 1467250, at *3 (M.D. Pa. Mar. 26, 2020) ("Both affidavits at issue here do not declare that the affiants' statements were made under the penalty of perjury. Instead, both merely state that the affiants 'attest and swear' to the information provided. Therefore, . . . the court is unable to consider these affidavits for purposes of summary judgment"); *Spedale v. Constellation Pharms. Inc.*, No. 17-109, 2019 WL 3858901, at *5 (D. Ariz. Aug. 16, 2019) (affidavit fails to substantially comply with § 1746 where it states: "The foregoing statements made by me are true and correct to the best of my knowledge. I am aware that if the foregoing are willfully false, I am subject to punishment."); *but cf. Duran v. Merline*, 923 F. Supp. 2d 702, 716 n.7 (D.N.J. 2013) (court found plaintiff's certifying statement, which included language that "if any of the foregoing is willfully false I am subject to punishment," to be "problematic because it was not expressly made 'under penalty of perjury,'" but nonetheless considered the evidence "regardless of such a technical defect, since the County Defendants did not object to it, and the Court would have permitted the pro se Plaintiff to correct this error upon such an objection."); *Scott v. Calpin*, No. 08-4810, 2012 WL 3019955, at *1 (D.N.J. July 24, 2012) ("Defendant's certifications are also problematic because they were not made 'under penalty of perjury.' Instead, they read: 'I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are knowingly false, I am subject to punishment.' While there is authority to suggest that such a statement is insufficient to satisfy 28 U.S.C. § 1746, this Court is satisfied that this language effectuates the intent and purpose contemplated by 28 U.S.C. § 1746 such that it is substantially in the form proposed by the statute, as required.") (cleaned up).

In any event, even if I were to find that Meronvil's statement substantially complied with § 1746(2), the allegations in the amended complaint would not change my analysis. I note, however, that in light of Meronvil's pro se status, if the allegations would have changed the outcome and/or the defendants had objected to the deficient verification (which they did not), I would likely have given Meronvil an opportunity to correct the deficiency. *See, e.g.*, *Doe v. Mercy Cath. Med. Ctr.*, No. 15-2085, 2019 WL 3243249, at *2 (E.D. Pa. July 17, 2019) ("Plaintiff moved for leave to correct her declaration to include the language required by 28 U.S.C. § 1746 that her statements were made 'under penalty of perjury.' . . . Despite Plaintiff's repeated and inexcusable failure to comply with Federal Rule of Civil Procedure 56, we have allowed Plaintiff to amend her Declaration to include the statutorily-required language."); *Cost*, 2020 WL 1467250, at *3 ("[B]ecause the court believes the Giedieviells' affidavits will have a significant effect on the court's resolution of the parties' pending motions for summary judgment, Defendants will be permitted to cure the deficiencies in the affidavits").

Meronvil "collapsed onto his stomach" from the pain. *Id*. Oliver asked him, "Didn't I tell your Haitian ass to stay on your knees?" *Id*. Meronvil replied that he "couldn't take the pain." *Id*.

Oliver told another officer, "G. Doyle," to "get [Meronvil] up and take him to the barber shop." *Id*. Doyle and other corrections officers escorted Meronvil to the barber shop and Oliver ordered the other inmates out of the area. *Id*. Once the area was clear, corrections officers "E. Vazquez, H. Silva, Marcado, [and] Gomez, along with Sgt. Oliver stood before [Meronvil]" and Oliver said, "Fuck his ass up." *Id*. Following the order:

> Marcado came up behind plaintiff and put him in a choke hold saying: "Sgt. Want me to take him out? G. Doyle punched plaintiff in the face followed immediately from a punch from E. Vazquez[.] Marcado picked plaintiff up from behind using the choke hold he had applied and body slammed plaintiff to the floor – Sgt. Oliver began to kick plaintiff about the stomach and ribs – followed by H. Silva and Gomez. Then mace/o.c./pepper spray was sprayed in plaintiff's face/head area[.]
>
> Gomez grabbed one of plaintiff's legs and began kicking him in the groin – after which H. Silva spit in plaintiff's face a number of times. Then [a] code 33/fighting emergency was called.

DE 22 at 4–5 (quotations and paragraph numbers omitted). The assault continued even as Meronvil was being taken to the infirmary, and he was then placed in a "dry cell" for three days. *Id*. at 5. During his time in the dry cell, Meronvil filed grievances complaining of the "vicious assault." *Id*.

Three days later (September 19), a Special Investigation Division ("SID") officer determined that Meronvil should be "examined again." *Id*. That examination "determined [that Meronvil] had broken ribs, lacerations[,] and contusions to the face, head, and body." *Id*. Disciplinary charges were brought against Meronvil; hearings were held on September 20, 22, 27, and 29, 2016; and Meronvil was found not guilty of all charges. *Id*. On September 30, 2016, Meronvil was transferred to East Jersey State Prison. *Id*.

### B. Summary Judgment Record

Against this backdrop, the defendants submitted, in support of their motion for summary judgment, the following:

(1) Meronvil's responses to interrogatories, DE 105-5, in which he recounts facts largely consistent with his complaint and states that Oliver ordered other officers to "fuck [him] up"; that Oliver then kicked him while he was on the ground and sprayed him with a chemical agent; and that he suffered two broken ribs, lacerations, contusions, and a dislocated shoulder;

(2) a document called "progress notes report," which the defendants use to establish the uncontroversial point that Meronvil was incarcerated at Northern State Prison on the date(s) in question, DE 105-6;

(3) Sergeant Oliver's responses to Meronvil's requests for admission, in which she admits that she "arrived on the scene" and "assisted in securing inmate Meronvil," who "had just assaulted or attempted to assault SCO Vazquez while being strip-searched," DE 105-7;

(4) the 16-page[3] transcript of Meronvil's deposition, DE 105-8, quoted at length below;

(5) a document that appears to be Meronvil's inmate grievance in which he alleges that he was assaulted on the day in question and suffered various injuries, including broken ribs and lacerations, DE 105-9;

(6) an incident report, dated more than a year after the incident, and after Meronvil instituted this lawsuit, which recounts, among other things, an interview with Vazquez in

---

[3] Although the transcript is 16 pages, the first 6 pages consist largely of instructions and background information (e.g., Meronvil's name, date of birth, marital status, criminal history, etc.), thus the portion devoted to the incident, its aftermath, and Meronvil's claims is only about 10 pages. DE 105-8 at 8–17.

which Vazquez stated that Meronvile "swung" at him and he then sprayed Meronvil with a chemical agent and "t[ook] him to the ground," DE 106; and

(7) a process receipt showing service attempts on Doyle were unsuccessful, DE 105-11.

It does not appear that Vazquez or Oliver (or any other correctional officer) was deposed (if they were, transcripts have not been provided). The defendants have not submitted declarations setting forth their version of the events in question, and no medical records have been provided showing (or disputing) the extent of Meronvil's injuries, or lack thereof.

As far as I can tell from reviewing this sparse record, it is undisputed that on September 16, 2016, Meronvil was an inmate at Northern State Prison, and on that date, during a search that was being conducted for unknown reasons, he was involved in some sort of altercation with corrections officers, including defendants Oliver and Vazquez, which resulted in Meronvil being sprayed with a chemical agent, taken to the ground, and transported to the medical unit. Defendants do not meaningfully deny that Meronvil was injured; at least, the defendants have provided no evidence to contradict Meronvil's contention, in both his answers to interrogatories and response to summary judgment, that he suffered various injuries including broken ribs. And there also appears to be no dispute that Oliver and Vazquez were both somehow involved in the altercation; as noted, Oliver's response to Meronvil's request for admissions states that she "assisted in securing inmate Meronvil," and the incident report indicates that Vazquez sprayed Meronvil with a chemical agent and "took him to the ground," whatever that may mean.

There are, however, disputes, or at least a lack of clarity, as to some important details. Meronvil contends that the use of force was for no legitimate reason, and thus amounted to an unconstitutional assault; the defendants, for their part, appear to contend that while Vazquez was searching Meronvil, Meronvil attempted to assault Vazquez, and that some degree of force was

applied to subdue Meronvil in a good faith effort to restore order. But there is no declaration, testimony, or other evidence to that effect, apart from the incident report, dated 1.5 years after the incident, and after this lawsuit was filed, in which it is reported that Vazquez told an investigator that he used force after Meronvil attacked him. DE 106.

### C.  Parties' Arguments

It is conceded, then (or at least not disputed) that an altercation occurred; that force was used; and that Meronvil was injured; and defendants have submitting documents tending to show that Oliver and Vazquez were involved in this use of force. The defendants nonetheless argue that they are entitled to summary judgment because "there is nothing in the record showing that either Oliver or Vazquez were [sic] personally involved in the alleged violations of [Meronvil's] civil rights." DE 105-1 at 5. This argument is premised on Meronvil's purported inability, during his deposition, to specify which officers punched, sprayed, and otherwise assaulted him. *Id.* at 12 (arguing that Meronvil "admitted during his deposition that he was unable to identify anyone who assaulted him").

The following comprises counsel's complete examination of Meronvil regarding the alleged assault:

> Q Okay. So I'd just like you to tell me in your own words, in as much detail as you can, what you allege happened on September 16, 2016.
>
> A That date?
>
> Q Uh-huh.
>
> A Okay. You want me to start from day one?
>
> Q Yeah.
>
> A Okay. We was -- I was working. I was 12 working in the pan -- in the line. I was serving food at that time. It was around maybe six o'clock in the afternoon. Then after -- after mess was over, then the 15 sergeant and a couple officers came. Sergeant Oliver came on the tier to tell everybody to stop -- stop what they doing and get on their knees and their hand behind their head. We all -- we all did that. And after that they told us to get up to go down -- to go downstairs on the first

floor. We was on the second -- I was on the second floor. So they tell us to go down there on the first floor. So when we got in the first floor they -- we was right there by the center, it's like a booth, an officer booth. They told us all line up over there, just lay down -- I mean, get on our knees with our hand behind our -- you know, behind our head. Then I -- we all did that. Then after -- after -- after a couple seconds they was taking guys one by one, two at a time to the -- to the barbershop, strip searching them, whatever, whatever. And about a good maybe 10, 15 minute passed. I had -- I was feeling pain in my back and stuff like that. So I told -- I told the officer, can I lay -- can I lay on my stomach flat, because they had other guys that was doing it, that was asking. So they told me no at that time. So, okay. I waited for another maybe minutes. I asked the officer again -- matter of fact, I asked the sergeant. Sergeant said no. Then I waited. I waited again. I took -- I took it up with myself and laid flat on the floor, you know, with my hand behind my back. Then they came to me, they said, why you laying on the floor, who told you you can lay on the floor. I said, my back was hurting. Then they said, all right. Then one of them -- I think one of them said, we got a tough guy here. So they -- they picked me up, brought me to the barbershop and while -- while we was in the barbershop -- when I came in they had a couple inmates in the barbershop. They was -- they was getting strip searched. They was on their knees, whatever. But they -- they told me to stand there and then they start talking to me about who told you to lay on your stomach, who, who. Then I was like, you know, my back was hurting so that's why I laid on my stomach. So next thing you know, somebody hit me. Somebody strike me. I didn't know -- I didn't know where the punch coming from. Then my nose start bleeding. Then they hit me again. That's when the code went off. I was on the floor, I was getting stomped and all that. And next thing -- next thing I know they was dragging me out the building. I'm in the yard, people still -- police was still hitting me. I was getting hit back and forth, boom, boom, boom, boom, boom, boom, boom. Then they -- they walked me all the way from -- from E Unit to Medical. When I got to Medical I told the nurse -- the nurse asked me what happened. I told the nurse, I got jumped by the police. They said -- she said, who jumped you. I said, I'm -- right now I couldn't breathe, I was maced, I didn't -- eyes was burning. And she said, who -- who jumped you. I'm like, the officers jumped me. And then next thing, they was like, you know, he's lying, boom, boom, boom, boom, boom. They say he lying. Then they took me to this -- to this unit they call S -- SU, Special -- Special Unit. It's a special unit, they took me there. The nurse asked me the same thing. I said, yeah, they jumped me. I was messed up. I was dizzy and everything. And they took me there. They asked me -- the nurse asked me a couple question. Then after that they took me to a dry cell. Took me to a dry cell, they strip searched me. I was -- I was -- I didn't have no clothes, I was butt naked. Then they left me there and that was it. That was it. Yeah.

Q Okay. I want to ask you a little bit more about when you first got hit, all right? You testified that you got hit kind out of no where and you don't know by who, right?

A Uh-huh.

8

Q And then later you testified that when you saw the nurse she asked you what happened and you said, the police jumped you, right?

A Uh-huh.

Q Do you know which specific officers did what?

A Well –

Q Or was it generally a group of officers?

A But -- I couldn't really say. One officer that was really in my face, he was real aggressive. I think that's the one that hit me. What's his name? Doyle. Officer Doyle.

Q Doyle? Okay.

A Officer Doyle. He -- I think he -- he was the first one that hit me. After that, that was it.

Q Now, you say you think you know that he hit you. Is there a way that we can know for certain or did you not see it, so –

A Not for certain because –

Q Because you didn't see it, right?

A He was the closest one. He was the closest one to me. Because he was talking to my face and the next thing I know I felt the hit.

Q Okay.

A You know what I mean?

Q So it makes sense that it was him but you didn't see who hit you?

A No, I didn't.

Q Okay. Okay. So when you say that the officers as kind of a group jumped you or assaulted you or however you want to characterize it, you don't necessarily know who landed what punches or kicks or what have you, it's -- it was kind of -- correct me if I'm wrong, but you kind of perceived it as a group of individuals doing this to you, is that right?

A Because I said -- I said it like -- when I walked in the room I seen faces. I seen -- when I walked in the barbershop I could see faces. I seen who was there, you know what I mean? And I know who was there, that's who hit me.

Q Okay.

A Yeah. I could see who was there. But when I got hit, I was on the floor, I was balled up, I couldn't see who was landing -- what punches, who was landing kicking. I didn't see none of that because I was balled up.

DE 105-8 at 8–13.

The defendants' argument, in other words, is that Oliver and Vazquez are entitled to summary judgment, despite the fact that they were present and participated in the alleged use of force, because, according to Meronvil, so many officers were pummeling him simultaneously that he cannot say for sure who hit him when. They also argue (1) Meronvil cannot present a prima facie case that the defendants conspired in violation of 42 U.S.C. § 1985 because there is no evidence demonstrating an agreement between the defendants or that their alleged actions were motivated by a racial or class-based animus (DE 105-1 at 5–6); and (2) Meronvil's 42 U.S.C. § 1986 claim is time-barred (DE 105-5 at 6).

Meronvil submitted opposition papers including a declaration,[4] asserting that Oliver "ordered the attack" (DE 110-1 at 1), "kicked and sprayed him with her OC spray" (*id.*; *see also id.* at 9), and called him a "Haitian motherfucker" (*id.* at 9). He further states that Vazquez "was on my back hitting me and though I could not see him, Officer Doyle called to him: 'Vazquez get off him,'" and "Vazquez had just been punching me about the head." *Id.* He also avers that

---

[4] Local Rule 56.1(a) provides, in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. . . .

Meronvil did not follow this rule. Instead, as noted, he filed a declaration in support of his opposition. DE 110-1 at 9. Given that "[a] document filed pro se is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), I will consider Meronvil's declaration in determining whether there are material facts in dispute sufficient to preclude summary judgment. *See*, *e.g.*, *Miller v. Berrios*, No. 21-9912, 2023 WL 3452623, at *2 (D.N.J. May 15, 2023) (where pro se plaintiff did not follow Rule 56.1, but instead filed a "Certification in Opposition to Summary Judgment," the court construed the document liberally and in deciding the motion, considered only "those disputed material facts that are properly supported by affidavit or other documents"); *Gilmore v. Fitzmaurice*, No. 16-1300, 2018 WL 4178227, at *8 (N.D.N.Y. May 31, 2018) ("In deference to Plaintiff's pro se status, and consideration of the obvious effort Plaintiff has put into responding to Defendants' motion for summary judgment, the Court has opted to review the entire summary judgment record[.]"), *report and recommendation adopted*, 2018 WL 4153927 (N.D.N.Y. Aug. 30, 2018).

his seventh and eighth ribs were fractured, he sustained "multiple contusions and lacerations," and that he was found not guilty of charges that he attempted to assault the defendants. *Id.*

In reply papers submitted June 8, 2023 (DE 113), the defendants argue that (1) "because Meronvil has failed to address Defendants' Statement of Undisputed Material Facts, all of Defendants' facts should be deemed admitted for purposes of the motion," and (2) Meronvil should not be permitted to rely on his declaration in opposition because it "contradicts his deposition testimony." DE 113 at 3. In the alternative, they argue that Meronvil's statements "do not support that any force exercised against him was excessive"; rather, the evidence he submitted demonstrates that the defendants "were preventing Meronvil from assaulting a fellow officer" and, as such, were acting "solely for the purpose of maintaining order and discipline." *Id.* at 4, 6. The defendants also reiterate their argument that Meronvil's § 1986 claim is time-barred. *Id.* at 7–8.

## II.   DISCUSSION

### A.  Summary Judgment Standard

A court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a), (c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome. *Id.* The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, 477 U.S. at 323. "If the moving party meets its

burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).

"At the summary judgment stage of proceedings, courts do not weigh the evidence or make credibility determinations, but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quotations and citation omitted). The non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Summary judgment should be granted if the Court finds, in consideration of all the evidence, that no reasonable trier of fact could find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**B.  42 U.S.C. § 1983 and NJCRA Excessive Force Claims**

Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The NJCRA was modeled after § 1983 and creates a state law cause of action for violation of an individual's federal and state constitutional rights. *Owens v. Feigin*, 194 N.J. 607, 947 A.2d 653 (2008). "The NJCRA is interpreted analogously to § 1983." *Alexander v. Borough of Pine Hill*, No. 17-6418, 2020 WL 6779148, at *5 (D.N.J. Nov. 18, 2020).

"To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States," and "that the alleged deprivation was committed or caused by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To impose liability under § 1983, a defendant "must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). If a plaintiff alleges "that one or more officers engaged in unconstitutional conduct," he or she "must establish the personal involvement of each named defendant." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018) (cleaned up); *see also McKay v. Krimmel*, No. 22-1302, 2023 WL 4231714, at *2 (3d Cir. June 28, 2023) (same).

"[T]he pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)). In determining a claim of excessive force, courts should consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response.

*Id.* (citing *Brooks*, 204 F.3d at 106, citing *Hudson*, 503 U.S. at 7). "Inherent in the nature of this analysis is the clear conclusion that an Eighth Amendment excessive force claim may prevail even where the plaintiff's own actions instigated a legitimate physical response, but the officers considerably exceeded the necessary amount of force in mounting their response." *Neal v. Powell*, No. 17-4768, 2023 WL 4118347, at *5 (D.N.J. June 22, 2023) (citing *Jacobs v. Bayha*, 616 F. App'x 507, 513–14 (3d Cir. 2015)).

Here, as noted above, the defendants contend that they are entitled to summary judgment on Meronvil's excessive force claim because he "has failed to adduce any evidence that Va[z]quez or Olivier [sic] were [sic] personally involved in causing his any [sic] injuries." DE 105-1 at 12. I am not persuaded.

To begin with, the deposition testimony that the defendants rely on—quoted above in full—does not conclusively establish that Meronvil cannot identify the officers who allegedly assaulted him; to the contrary, Meronvil testified that he saw the faces of the people who hit him and that he would be able to identify them if he saw them again. *See* DE 105-8 at 13 ("I seen -- when I walked in the barbershop I could see faces. I seen who was there, you know what I mean? And I know who was there, that's who hit me."). Counsel abruptly ended the deposition without asking seemingly logical follow-up questions designed to get at the truth (e.g., Who did you see? Can you describe them? etc.). As a result, this truncated deposition testimony is not inconsistent with Meronvil's being able to identify in court the officers who beat him.

The deposition testimony also does not support the defendants' representation that "Meronvil testified during his deposition that he was unable to identify any wrongdoing by Oliver or Vazquez," DE 113 at 4, or that "there is nothing in the record showing that either Oliver or Vazquez were [sic] personally involved." DE 105-1 at 5. Rather, Meronvil's testimony indicates that *all* of the officers in the barbershop assaulted him, and there is abundant evidence in the record (set forth below) from which a reasonable jury could find that Oliver and Vazquez were there. And not only that they were there, but, viewing the evidence in the light most favorable to Meronvil, that they deployed OC spray and engaged in physical contact with Meronvil. The following evidence could lead a reasonable jury to these conclusions:

- SID Administrative Investigation report dated December 22, 2017: "OC spray was deployed against [Meronvil] by SCO Va[z]quez" (DE 106 at 2); "Va[z]quez stated that

he pushed inmate Meronvil away from him and was able to deploy OC spray" (*id.* at 3); Va[z]quez "stated that inmate Meronvil was noncompliant and combative and that he (Meronvil) was subsequently taken to the ground" (*id.*) "Va[z]quez stated that he was able to secure the inmate in handcuffs with assistance from Sgt. Vargas" (*id.* at 3); and "Va[z]quez indicated that he only used force against inmate Meronvil after the inmate attempted to assault him" (*id.* at 4).[5]

- Special Custody Report by Oliver dated September 16, 2016: Oliver "assisted with the securing of Inmate Meronvil." DE 110 at 4.

- Special Custody Report by Doyle dated September 16, 2016: "Vazquez deployed OC at the inmate" and "assisted in restraining Inmate Meronvil to the ground." *Id.* at 6.

- Special Custody Report by Silva dated September 16, 2016: "Vazquez sprayed the inmate with his OC"; "the inmate was taken to the ground and he would not give up his hands to be handcuffed," and "Vargas and SCO Va[z]quez had to get on top of the inmate and grab his arms in order to handcuff the inmate." *Id.* at 7.

- Meronvil's answers to defendants' first set of interrogatories dated June 25, 2018: "Sgt. Oliver approached [Meronvil] and told defendant G. Doyle to get the plaintiff up and take him to the Barber Shop, Officer G. Doyle escorted plaintiff to the Barber Shop and Sgt. Oliver ordered all other inmates out. Once area is clear of inmates, Sgt. Oliver orders the other officers present to 'Fuck up plaintiff.' At which point the other officers began to physically assault plaintiff. Once plaintiff was defenseless on the ground Sgt. Oliver kicked him about his stomach, ribs and groin area and officers including Sgt. Oliver sprayed O.C./Pepper spray in plaintiff's face and called a Code 33/Fighting emergency code." DE 105-5 at 2–3. "Defendant Vazquez -- upon orders from defendant Sgt. Oliver punched and hit plaintiff about the face." *Id.* at 4.

- Oliver's responses to Meronvil's requests for admissions dated October 22, 2018: Oliver "assisted in securing inmate Meronvil." DE 105-7.

- Meronvil declaration dated April 27, 2023: "After the initial attack upon me once I was cuffed on the ground defendant Sgt. Oliver did kick me and again referenced my Haitian Origins stating: 'Hatian Motherfucker,' she th[e]n sprayed OC spray on me. Defendant Vazquez, was on my back hitting me and though I could not see him, officer Doyle called to him: 'Vazquez get off him,' Vazquez had just been punching me about the head, th[e]n Doyle used OC spray on me." DE 110-1 at 9.

---

[5] This document is marked confidential and has been filed under seal. DE 106 (document); DE 112 (order to seal). I quote only from the relevant portions of the report that do not implicate the information protected by the seal order—that is, information that does not compromise "the [DOC], DOC staff, and DOC inmates' interest in safety, which is implicated by . . . information discussing the internal workings of DOC facilities, certain policies concerning prison safety, and how correctional officers are required to act in certain situations contained in these materials." DE 112 at 3.

In short, the record contains sufficient evidence from which a jury could find that (a) there was a use of force, (b) Meronvil was injured, and (c) Oliver and Vazquez participated in that use of force.[6] For such group activity, it is not a bar to liability—indeed, it seems quite natural—that the victim cannot state precisely which officer landed which blow. And there is a dispute of material fact as to whether that force was, as the defendants appear to contend, legitimately needed to restore order, or whether, as Meronvil contends, it was wanton and excessive.

In many respects, this case resembles *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002), in which the Third Circuit reversed a grant of summary judgment in favor of defendant corrections officers where the officers were present during the alleged excessive force, but the plaintiff conceded that he was "not sure that [the particular officers] participated in [his] beating at all." 293 F.3d at 650. The court opined:

> [T]he fact that Smith has acknowledged that he could not see those defendants during the beating neither negates their involvement nor their liability as a matter of law. Smith testified: "Officer Yurkiewicz, Zubris, Androshick, McCole, Jones, *all of them* was in back of me and they were pushing my head, right, into the cabinets in the wall, cabinets and walls. And then after that, I was knocked to the floor." He further testified: ". . . *the full force of all the guards [was] behind me,* they rammed my head into the cabinet and into the wall . . . *No, I didn't say he [Yurkiewicz] did. I said all of them.*" That testimony is sufficient to create a genuine issue of material fact as to each of those defendants.
>
> Moreover, it is undisputed that all of the named officers were in the vicinity at some point when Smith alleges he was beaten. The extent of each officer's participation is thus a classic factual dispute to be resolved by the fact finder.

---

[6] As noted above, the defendants have not provided sworn statements (or anything) denying their personal involvement in the alleged force. *See, e.g.*, *Gilmore v. Fitzmaurice*, No. 16-1300, 2018 WL 4178227, at *9 (N.D.N.Y. May 31, 2018) (denying summary judgment and noting that, "although not necessarily dispositive, the summary judgment record lacks a declaration or affidavit from Overholt denying his alleged personal involvement in the use of force"), *report and recommendation adopted*, 2018 WL 4153927 (N.D.N.Y. Aug. 30, 2018).

*Smith*, 293 F.3d at 650 (citations omitted; emphasis in original); *see also McKay v. Krimmel*, No. 22-1302, 2023 WL 4231714, at *2 (3d Cir. June 28, 2023) (vacating summary judgment for defendant police officers where the record indicated that officers participated in the arrest underlying the excessive force claim and "[w]hat remains . . . is a 'classic factual dispute to be resolved by the fact finder' about the extent of each officer's participation") (quoting *Smith*, 293 F.3d at 650); *Ringgold v. Keller*, 608 F. App'x 102, 104–05 (3d Cir. 2015) ("Ringgold testified at his deposition that he felt multiple officers punching, kicking, and kneeing him, and the [evidence] does not categorically rule out the possibility that [defendants] were doing just that. Accordingly, the extent of each officer's participation is a factual dispute to be resolved by the jury."); *Miller v. Berrios*, No. CV 21-9912, 2023 WL 3452623, at **7–8 (D.N.J. May 15, 2023) (Where plaintiff alleged that "all [defendant officers] took part in the excessive use of force" and defendants asserted they were entitled to summary judgment because "Plaintiff has not identified which defendant committed which act of excessive force," the court denied the motion, holding that "the extent of each officer's participation in the alleged excessive force, including which defendant stomped on Plaintiff's legs, is a 'classic factual dispute to be resolved by the fact finder.'") (quoting *Smith*, 293 F.3d at 650).

Here, too, the extent of each defendant's participation in the alleged excessive force is a question to be resolved by the trier of fact. A reasonable factfinder could credit Meronvil's testimony and conclude that Oliver ordered the attack and that she and Vazquez used force against Meronvil not "in a good-faith effort to maintain or restore discipline," but rather "maliciously and sadistically to cause harm." *Smith*, 293 F.3d at 649. Or, of course, it could find that Meronvil attempted to assault Vazquez and the subsequent use of force was reasonable and required to restore order. The dispute cannot be resolved on this record. And to the extent there

are inconsistencies in the record among Meronvil's deposition testimony and his other accounts

of the alleged assault,[7] they present a credibility issue to be resolved by a jury. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.");

*Gilmore v. Fitzmaurice*, No. 16-1300, 2018 WL 4178227, at *9–11 (N.D.N.Y. May 31, 2018)

("Any inconsistencies or discrepancies in Plaintiff's testimony, including whether or not it was

Overholt or Fitzmaurice who allegedly stomped on Plaintiff's leg restraints, goes to the weight

accorded to Plaintiff's testimony."), *report and recommendation adopted*, 2018 WL 4153927

(N.D.N.Y. Aug. 30, 2018). Accordingly, the defendants' motion for summary judgment on the

excessive force and NJCRA claims based on the ground that Meronvil has failed to establish

their personal involvement will be denied.

The defendants' alternative argument—that even if the Court were to accept Meronvil's

allegations as true, the statements "do not support that any force exercised against [Meronvil]

was excessive" (DE 113 at 4)—is raised for the first time in their reply brief, and I could, and

probably should, decline to consider it on that basis alone. But, even considering it, it does not

entitle them to summary judgment. A reasonable jury could conclude that the force alleged by

---

[7] I pause here to acknowledge the defendants' argument that Meronvil cannot defeat summary judgment
by relying on a declaration that conflicts with his deposition testimony. It is true that "a party may not
create a material issue of fact by filing an affidavit disputing his or her own testimony." *Baer v. Chase*,
392 F.3d 609, 624 (3d Cir. 2004); *see also Jiminez v. All Am. Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir.
2007) ("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it
is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary
weight and that summary judgment is appropriate."). But here there is no conflict between Meronvil's
testimony—in which he stated that *all* of the officers beat him—and his subsequent declaration. Further,
there is "independent evidence to bolster the contradictory testimony," *Jiminez*, 503 F.3d at 254, in that
the defendants themselves have submitted documents tending to show that Oliver and Vazquez were
present and participated in the use of force. As noted above, to the extent there are discrepancies, they go
to weight and credibility, not admissibility.

Meronvil, which resulted in broken ribs, and "lacerations and contusions to [Meronvil's] face, head and body" (DE 105-9 at 3–4), was greater than necessary to restore order, and therefore excessive. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation" and "may also provide some indication of the amount of force applied."); *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 293–94 (D.N.J. 2015) ("Defendants first argue that the force was not excessive. For support, they point to correctional officers' testimony that they gave Plaintiff a one-second burst of pepper spray and performed two take downs using 'minimal force.' A reasonable jury, however, could find that Plaintiff's severe injuries could not have been caused by the force described by Defendants."). Moreover, given that Meronvil was found not guilty of the disciplinary charges brought against him—which tends to contradict the defendants' assertion that they only used force in response to an assault on an officer—a reasonable jury could conclude that the defendants applied force maliciously and sadistically to cause harm. *Smith*, 293 F.3d at 649.

Further, the record contains no video evidence or affidavits, certifications, declarations, deposition testimony, or other sworn statements addressing the extent and reasonableness of the force used. DE 106. And the SID report, which purports to provide details of the incident, also does not describe the force used to "secure" Meronvil, other than to state that OC spray was deployed.[8] *Id.* at 2, 3. Beyond that, the report contains non-descriptive, conclusory language

---

[8] Even if OC spray was the extent of the force used, a reasonable jury could conclude that such force was excessive if it was used to punish or inflict pain. *Leaphart v. Campbell*, No. 21-1293, 2023 WL 4276463, at *12 (M.D. Pa. June 29, 2023) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.") (cleaned up); *see also Robinson v. Danberg*, 673 F. App'x 205, 211–12 (3d Cir. 2016) (inmate's claim that he was "maced" while he posed "no imminent threat" and for no "legitimate penological reason" could result in factfinder determining that force was more than de minimis and unconstitutional); *Neal v. Powell*, No. 17-4768, 2023 WL 4118347, at *7 (D.N.J. June 22, 2023) ("a jury

designed to obscure rather than describe the extent of force used and resulting injury. Thus Vazquez "assisted in the taking down and securing of inmate Meronvil" (*id.* at 2); "Meronvil[] was . . . taken to the ground" and "Va[z]quez was able to secure the inmate in handcuffs with assistance from Sgt. Vargas" (DE 3); and "Vargas indicated that he had to assist in taking inmate Meronvil down to the ground to secure him in handcuffs" (*id.*). *See, e.g.*, *Latimer v. Smith*, No. 16-4004, 2018 WL 3979632, at *4 (D. Minn. July 20, 2018) (noting on motion for summary judgment that officer's "affidavit is unhelpful to the Court because it speaks of 'staff' and 'we' and 'restraining' [Plaintiff], collective statements that do not clearly state what [the officer] personally did or did not do on July 24, 2016" and advising that the "poor drafting" of the affidavit "does a disservice to the named parties in this lawsuit as well as the Court") (citations omitted), *report and recommendation adopted*, 2018 WL 3978113 (D. Minn. Aug. 20, 2018).

In short, defendants cannot hide behind a blue wall of vagueness. The record does not permit a ruling either way as to the extent of the defendants' use of force on Meronvil, nor can I determine as a matter of law whether such force was reasonable. Accordingly, because the defendants' position—that the force used was reasonable—presents an issue of material fact, summary judgment in favor of the defendants based on their alternative argument will be denied. *See, e.g.*, *Johnson v. Anderson*, No. 17-998-J-34, 2019 WL 3717900, at *6–7 (M.D. Fla. Aug. 7, 2019) (where "the parties offer significantly different accounts of Defendant McKinley's use of force, the motivation for McKinley's decision to spray Johnson with chemical agents and force Johnson to the ground, and the involvement and motivations of Bryant and Griffin[,] . . . the Court finds that there remain genuine issues of material fact with respect to Plaintiff's Eighth Amendment claims").

---

could infer that Woolson's use of the spray was not a good faith effort at attempting to restore order, but rather an action taken to inflict harm on Plaintiff out of anger").

On the § 1983 and NJCRA excessive force claims, then, defendants' motion for summary judgment is denied. I will, however, grant summary judgment in favor of the defendants on Meronvil's other claims, as follows.

### C.  42 U.S.C. §§ 1985 and 1986 Conspiracy Claims

Section 1985, like § 1983, is not a source of substantive rights, but rather provides a vehicle for vindicating the violation of other federal rights. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979). "In general, the conspiracy provision of § 1985(3) provides a cause of action under rather limited circumstances against both private and state actors." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001). To prevail on a § 1985 claim, a plaintiff must demonstrate: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971)); *see also United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983); *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

In addition to establishing that the object of the conspiracy was the deprivation of a federally protected right, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action[.]" *Capogrosso v. The Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *Ramziddin v. Onfri*, No. 19-17578, 2022 WL 4354837, at *5 (D.N.J. Sept. 20, 2022). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice . . . . The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be

inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 944, 948–49 (3d Cir. 2019). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Section 1986 provides an additional cause of action for those able to state a claim under Section 1985. Section 1986 provides a cause of action against persons who are aware of a Section 1985 conspiracy, but fail to intervene. To state a claim under Section 1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a section 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). "[T]he success of a section 1986 claim is contingent upon the existence of a viable section 1985 claim." *Murphy v. Yates*, 2005 WL 2989630, at *2 n.2 (E.D. Pa. Aug. 8, 2005) (quotations and citation omitted).

The defendants argue they are entitled to summary judgment on Meronvil's § 1985 claim because he has failed to provide evidence that (1) there was a meeting of the minds between Oliver and Vazquez and (2) they conspired to harm him "because of his race or any protected class to which he may belong." DE 105-1 at 14–16. They further argue that Meronvil's § 1986 claim is time-barred because it was not brought within a year of September 16, 2016. *Id.* at 16–18. As to his § 1985 claim, Meronvil responds that he did nothing to warrant the assault against him "aside from being unable to kneel for an excessive period of time and being of Haitian

de[s]cent." DE 110-1 at 3. Meronvil did not respond to the defendants' argument that his § 1986 claim is time-barred.

As explained above, Meronvil's conspiracy claim requires, as an essential element, sufficient evidence from which a jury could reasonably infer that Oliver and Vazquez reached a *mutual understanding* to deprive Meronvil of his civil rights on the basis of his race or ethnicity. Viewing the evidence in the light most favorable to Meronvil, and even assuming *arguendo* that this was Oliver's intent, I cannot find that Meronvil has put forth either direct or circumstantial evidence sufficient to create an issue of fact as to a conspiratorial agreement between Oliver and Vazquez. Rather, his allegations and supporting evidence are focused solely on Oliver's alleged use of racial remarks and epithets against him, not on any agreement between Oliver and Vazquez. *See*, *e.g.*, DE 105-9 at 3 (Meronvil's October 23, 2016 grievance: "After a period of time, some inmates were allowed to lay on the floor due to the increasing pain in my knees and back. Sgt Oliver noticed my accent and asked me where I was from, I told her I was Haitian. She stated 'you guys are very strong enough, stay on your knees.'"); DE 105-5 (Meronvil's June 25, 2018 responses to defendants' interrogatories) at 2 ("Plaintiff requested to lay flat on his stomach like the other inmates. Sgt. Oliver asked plaintiff where he was from. Plaintiff responded, that he was from Haiti. Sgt. Oliver response was 'only Americans get comforts of America' and told plaintiff to remain on his knees."), 4 ("Defendant Sgt. Oliver [i]dentified plaintiff based solely on his Haitian heritage, ordered other inmates . . . out of the area[,] and ordered her subordinates to beat plaintiff."); DE 110-1 (Meronvil April 27, 2023 declaration) at 3 ("The Plaintiff did nothing to warrant this assault by these defendants, aside from being unable to kneel for an excessive period of time and being of Haitian decent, for which Sgt. Oliver mentioned multiple times."), 9 ("After the initial attack upon me once I was cuffed on the ground defendant Sgt. Oliver did kick

me and again referenced my Haitian Origins stating[,] 'Haitian Motherfucker'[,] she th[e]n sprayed OC spray on me.").

These remarks, if they occurred, were reprehensible and revolting, particularly in the mouth of an officer of the law. Nevertheless, "a single officer's use of racial epithets can be viewed, at most, as evidence of individual discriminatory animus on the part of the officer," and "without any evidence for a jury to find an agreement or concert of action necessary to constitute a conspiracy, [a] plaintiff's claim under § 1985 must fail." *Adegbuji v. Middlesex Cnty.*, No. 03-1757, 2006 WL 2806289, at \*10 (D.N.J. Sept. 28, 2006); *see also Jackson-Gilmore v. Dixon*, No. 04-3759, 2005 WL 3110991, at \*14 (E.D. Pa. Nov. 18, 2015) (granting summary judgment on a § 1985 claim because a single discriminatory comment by one officer did not create a genuine issue of material fact as to whether other officers shared that discriminatory animus); *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 683 n.14 (E.D. Pa. August 19, 2014) (even if one officer's comment demonstrated discriminatory intent, that is not evidence that other officers shared that intent or conspired to discriminate against a plaintiff); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 389 (S.D.N.Y. 2013) ("Reprehensible as it is, a single use of a racial epithet by a single officer does not . . . plausibly indicate that the eight individual Defendant officers (or even a subset of them) entered into any sort of agreement to deprive Chamberlain of constitutionally protected rights, let alone one based on collective racial or personal animus.").

In the absence of evidence demonstrating an agreement between Oliver and Vazquez, Meronvil's Section 1985 claim does not present a triable issue of fact, and summary judgment will be granted in favor of the defendants on this claim.[9] And because Meronvil has failed raise a

---

[9] *See, e.g.*, *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) ("[W]e assume that racial epithets were uttered at plaintiff by someone after he grabbed Officer Thornburg, we nevertheless conclude that

triable issue as to the existence of a § 1985 conspiracy motivated by a racial or class based discriminatory animus, he also cannot maintain a plausible § 1986 claim. *See Steinberg v. Johnson*, No. 22-2503, 2023 WL 2524452, at *3 (3d Cir. Mar. 15, 2023) ("To state a claim under § 1986, a plaintiff must plausibly allege, among other things, a predicate conspiracy prohibited by § 1985."). Thus, the defendants' motion for summary judgment as to this claim will be granted.[10]

---

there is a noticeable absence of any evidence of a *conspiracy* to deprive plaintiff of his constitutional rights. Plaintiff has introduced no evidence that defendants acted in concert or in furtherance of a common objective. In fact, the circumstances evince an occurrence of events much too quick to suggest that a conspiracy to deprive the plaintiff of his constitutional rights on the basis of his race was orchestrated.") (emphasis in original); *Martin v. Sec'y of Corr.*, No. 16-2060, 2018 WL 1158250, at *5 (M.D. Pa. Mar. 5, 2018) ("Martin has concluded that these Defendants conspired to hide his injuries, yet he has failed to allege any facts or produce any evidence showing an agreement or plan formulated and executed by these Defendants to achieve this conspiracy. Martin cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to this conspiracy claim, Martin's conspiracy claim amounts to nothing more than mere conjecture and bare speculation.") (citation omitted); *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650 (W.D.N.Y. 2017) ("[t]he mere fact that the officers were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim"); *Fobbs v. City of N.Y.*, No. 15-6736, 2017 WL 2656207, at *7 (S.D.N.Y. June 19, 2017) ("[t]he mere fact that multiple people were involved in the events giving rise to [the plaintiff's] complaint" did not establish a conspiracy); *Link v. Adamski*, No. 15-819, 2015 WL 6873574, at *7 (W.D. Pa. Nov. 9, 2015) ("[T]he use of derogatory name calling is not the same as being motivated to injure Plaintiff because of his race. Moreover, even if it could be said that Palla's use of racial slurs evidenced racial animus toward Plaintiff, Plaintiff has not alleged any facts that would support a finding that the other Defendants were so motivated so as to provide the basis for a Section 1985 conspiracy."); *Skinner v. Hinds Cnty., Miss.*, No. 10-358, 2012 WL 3913092, at *7 n.5 (S.D. Miss. Sept. 7, 2012) ("[N]othing in the record supports Plaintiff's allegation that Clincy and Reed conspired with Booth about anything, much less that such a conspiracy was based on class-based animus arising out of Skinner's use of racial slurs."); *Herve v. City & Cnty. of San Francisco*, No. 03-4699, 2004 WL 2806165, at *5–6 (N.D. Cal. Dec. 7, 2004) ("Herve has submitted evidence that Officer DiCroce used a racial slur against him. There is no evidence, however, that Officer DiCroce was engaged in a race-based conspiracy with any other officers.").

[10] Given my finding that Oliver has not plausibly alleged a Section 1986 claim, I need not decide whether, as the defendants contend, the claim was untimely. 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."); *Burnett v. Grattan,* 468 U.S. 42 (1984).

**III.     CONCLUSION**

For the reasons above, I will deny the defendants' motion for summary judgment (DE 105) as to Meronvil's excessive force claim brought pursuant to 42 U.S.C. § 1983 and the NJCRA, and grant the motion as to Meronvil's conspiracy claims brought pursuant to 42 U.S.C. §§ 1985 and 1986.

An appropriate order follows.

DATED:  July 31, 2023

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge